JOSEPHINE SPLINT, Respondent, v. JAMES B. SULLIVAN *et al.*, Appellants.

St. Louis Court of Appeals, May 29, 1894.

1. **Assignment:** VALIDITY OF PRIOR CHATTEL MORTGAGE. The evidence is considered and *held* to warrant a finding, that a voluntary assignment for the benefit of creditors by an insolvent and a prior mortgage by him were separate and independent transactions.

2. ———: ———: EFFECT OF SALE BY ASSIGNEE WITH CONSENT OF MORTGAGEE. The priority of a chattel mortgage is enforceable against the proceeds of the mortgaged property under a sale of the property free of lien, made by the assignee with the consent of the mortgagee, if such was the agreement of these parties at the time of the sale.

3. ———: ———. The fact, that the debts secured by a chattel mortgage were overdue at the time of the execution of the instrument, will not affect its validity.

4. ———: RIGHTS OF ASSIGNEE AND CREDITORS. *Held, arguendo,* that when a voluntary assignment is by its express terms made subject to a prior mortgage, neither the assignee nor the creditors of the mortgagor can claim under it any higher title or greater interest than is conveyed by it to the former.

*Appeal from the Hannibal Court of Common Pleas.*—
HON. R. F. ROY, Judge.

AFFIRMED.

*Anderson & Lighter* and *Harrison & Mahan* for appellants.

*F. L. Schofield* for respondent.

BOND, J.—James B. Sullivan, a merchant at Hannibal, Missouri, on December 26, 1891, executed a chattel mortgage on his stock of "dry goods and notions," contained in two stores in said city, to secure the payment of two certain promissory notes, viz., one note made by the mortgagor to Josephine Splint, November 23, 1891, for $500 payable thirty days thereafter with interest at eight per cent:, and another note by same maker to Farmers' and Merchants' Bank for $2,000, dated October 5, 1891, due sixty days thereafter with interest after maturity. Said mortgage contained a defeasance clause, upon payment of the aforesaid indebtedness "according to the true tenor, date and effect thereof;" and provided for the taking of immediate possession by the mortgagees, and a sale of the property conveyed at private or public sale. It further required the application of the proceeds thus arising to the payment of said indebtedness, and the surplus, if any, to be paid the mortgagor.

On the twenty-eighth of December, 1891, said mortgagor executed a statutory assignment for the benefit of his creditors, conveying the same property previously transferred in the mortgage, *supra*, and also certain store fixtures, furniture and choses in action. Said assignment recited that it was subject to the provisions of said mortgage.

After the execution of the mortgage, possession of the property therein conveyed was taken by one Whaley on the part of the mortgagees, who had such possession until about noon on the twenty-eighth of December, 1891, when the assignee took charge of said property under the said deed of assignment.

The mortgagor and assignor was largely indebted at the time of the making of these conveyances. Nei-

ther of the mortgagees presented their respective claims for allowance to said assignee.

In the course of the administration of his trust, said assignee was offered $6,605 for the stock of goods, provided the whole title could be conveyed. Thereupon, by order of court and by consent of said mortgagees, such conveyance was authorized, upon condition that enough of the proceeds to answer for the debts secured in said mortgage should be held by said assignee subject to the rights of said mortgagees. The present action is brought to enforce priority of payment of the $500 note, due plaintiff and secured in said mortgage, out of the proceed in the hands of the assignee under the sale made by him as above stated.

The evidence also tended to show that, about a month previous to these conveyances, the grantor spoke to the cashier of the bank about taking his stock under a mortgage so as to secure the borrowed money due to it and plaintiff, and that he then believed himself solvent. He was advised by the bank "to go ahead, and see if he could not work out." He did not see the cashier of the bank again until Saturday, the day of the execution of the mortgage, when he stated "that he was going down hill, * * * and said he wanted to make a transfer of the stock to us; *he wanted a mortgage made for our note and Miss Splint's.*"

The case was tried by the court sitting as a chancellor and a finding and judgment were rendered in favor of plaintiff, from which this appeal is taken. The only question presented on this appeal is whether or not the court was warranted, under the evidence, in giving effect to the chattel mortgage to plaintiff and the bank, independently of the subsequent general assignment executed by the mortgagor.

Our conclusion is that the substantial evidence supports the finding of the trial court, to the effect that

the two instruments were not *one* transaction. In the first place the evidence shows that there was a distinct purpose on the part of the debtor to prefer the two creditors secured in the mortgage. This intention was expressed about a month prior to the making of the mortgage, and was reiterated on the very day the mortgage was given. The mortgage was also an apt mode of effectuating such intention, and itself evidentiary of the purpose for which it was made. These facts and the circumstances attending the making of the mortgage clearly evidenced the purpose of the mortgagor to prefer thereby the indebtedness therein secured.

That *an individual*, whether solvent or insolvent, may prefer in the matter of payment or security certain *bona fide* creditors to the exclusion of others, is the settled law of this state. *Larrabee v. The Franklin Bank*, 114 Mo. 601.

The mortgage relied upon by plaintiff is not wanting in any essential to a valid instrument of that nature. *Hargadine v. Henderson*, 97 Mo. 375; *Jaffray v. Mathews*, 25 S. W. Rep. 187; *In re assignment of Zwang*, 39 Mo. App. 356; *Union Bank of Chicago v. Kansas City Bank*, 136 U. S. 223.

Nor is there any force in the suggestion that the condition to pay the two notes therein secured "according to the true tenor, date and effect thereof" was impossible. The fact, that both notes had matured when the instrument was made, did not preclude their payment at any time thereafter before sale of the mortgage property. Under the instrument in this record the mortgagees took immediate possession and began to sell according to its terms. Such sale, if privately conducted, could only have been completed after the lapse of some time, and, if publicly had, was required to be upon advertisement for a certain time.

In either event, the mortgagor had the right prior to its consummation to pay the debt secured and release the property from the mortgage.

Again, the general assignment in this case was, by the express terms thereof, made subject to plaintiff's mortgage, and, being available against the assignor, was equally enforceable against the assignee. *Russell v. Rutherford, ante,* p. 550; *Riddle v. Norris,* 46 Mo. App. 512; *Jacobi v. Jacobi,* 101 Mo. 507. Neither could the general creditors claim, under the assignment, any higher title or greater interest than that conveyed to the trustee on their behalf.

Nor is there any reason why lien of the mortgage should not be enforced against the proceeds of the sale of the mortgaged property in the hands of the assignee, where, as in this case, it appears that the mortgagees have never waived or released their rights as such in any manner. *Jacobi v. Jacobi,* 101 Mo. 507.

The result is that the judgment herein is affirmed. Judge ROMBAUER concurs. Judge BIGGS is absent.